WHIPPLE, C.J.,
concurring.
1|While I agree that the result reached herein is correct under the jurisprudence and statutory authority by which this court is bound, I write separately to express my concern that OGB did not include evidence in the administrative record that could have been easily obtained, and that is extremely important and relevant, to document and support its decision to award this very significant contract to Medlm-pact.
Specifically, I am troubled by the fact that the record does not contain the Master Service Agreement between Stone-bridge and MedGenerations. The Master Service Agreement is specifically mentioned in Medlmpact’s proposal, however, the agreement itself is not attached to the proposal or discussed in any detail. In response to the NIC’s request for a “description of services,” Medlmpact’s proposal states only that Stonebridge is the “CMS PDP Plan Sponsor,” and MedGen-erations provides “account support, claims processing, member/pharmacy call services, grievances and appeals.”
' Additionally, I am troubled by the fact that the record lacks any evidence demonstrating that OGB or its consultant questioned Medlmpact about the terms of the Master Service Agreement. In drafting the NIC and awarding the contract, OGB was well aware that a thorough understanding of the terms of the Master Service Agreement and business relationships between Stonebridge, MedGenerations, and Medlmpact was critical to ensuring the success of the contract, as OGB acknowledged that the three-party-contract used in the past for the EGWP plan “did not function well.”
^Nevertheless, despite the record deficiencies regarding the terms of the Master Service Agreement and the business relationships between these three entities, OGB contends that it evaluated and investigated these business arrangements and history of performance, and thereafter, determined that Medlmpact’s proposal was acceptable under the terms of the NIC. *691 As a court of review, we are now left with the precarious situation in which there is no evidence in the record demonstrating the scope and extent of OGB’s evaluation and investigation of these business arrangements, including its review of the Master Service Agreement; however, there is also no evidence in the record indicating that OGB did not, in fact, evaluate and investigate these business arrangements and the Master Service Agreement prior to awarding the contract to Medlmpact.[1]
Here, Catamaran has done an excellent job of outlining the applicable federal regulations and the serious possible risks posed by OGB’s decision to award the contract to Medlmpact. After thoroughly reviewing the federal regulations, I likewise am greatly concerned about’ OGB’s decision to award this contract to Medlm-pact, as the award of the contract to Med-lmpact leaves the state with no contractual relationship with an approved CMS-contracted PDP plan sponsor. However, the record does not reflect that OGB failed to consider these risks. Moreover, the standard of review is not whether this court would have awarded the contract to another proposer; rather, we must apply the standards of judicial review provided by LSA-R.S. 49:964(G) by analogy. United Healthcare, 103 So.3d at 1009. Specifically, herein, we must determine whether OGB was arbitrary and |acapricious or manifestly erroneous in finding that Med-Impact’s proposal satisfied the requirements of the NIC, based on its finding that under the terms of the Medlmpact’s proposal, MedGenerations, an undisputed affiliate of Medlmpact, would be the “primary provider of the EGWP PDP services.”
"While OGB certainly could have better defined what was meant by the term “primary provider of EGWP PDP services,” i.e., is the “primary provider” (1) the CMS-contracted approved PDP, sponsor, or (2) the provider of administrative services for the plan, this ambiguity alone does not justify setting aside the contract award. Recognizing that deference must be given to matters presumed to be within OGB’s scope of expertise and experience, I recognize that OGB was in the best position to determine what services to be provided under the contract are the most significant and who would be primarily responsible to OGB for such services. OGB contends that it considered MedGenerations to be the “primary provider of EGWTP PDP services” for purposes of .evaluating Medlm-pact’s proposal because MedGenerations would be the entity responsible for “administering” all aspects of the EGWP PDP plans, and MedGenerations would be the entity primarily responsible to OGB for services under the plan, while Stonebridge would provide only the PDP sponsorship. I am unable to say that it is unreasonable to view the “administrator” of the plan as the “primary provider” of “services” for the plan. Moreover, there is no evidence in the record demonstrating that MedGen-erations would not, in fact, be responsible for all administrative aspects of the EGWP PDP plans, nor is there evidence in the record demonstrating that MedGenera- *692 tions is not an “affiliate” of Medlmpact. Accordingly, I am unable to find that OGB was arbitrary and capricious or manifestly erroneous in finding that Medlmpact’s proposal satisfied the requirements of the NIC.
While I am concerned with the lack of transparency in this process, I am unable to say that OGB abused its discretion in awarding the contract to Medlmpact. ^Accordingly, I am constrained to affirm the decision of the district court. Thus, I concur in the result, which is legally correct.